### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

SUSO DAVILA,

   Plaintiff,                          CIVIL NO. 11-554 (NLH)(AMD)

      v.                               **OPINION**

CITY OF CAMDEN, SCOTT
THOMSON, ORLANDO CUEVAS,
INSPECTOR MICHAEL LYNCH, and
CHRISTINE JONES-TUCKER,

   Defendants.

_____

**Appearances:**

LAW OFFICES OF CHERYL L. COOPER
342 EGG HARBOR RD
SUITE A-1
SEWELL, NJ 08080
    On behalf of plaintiff

JAMES H. WALLER
611 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
    On behalf of defendant City of Camden

JEAN SHARON CHETNEY
JEAN S. CHETNEY, ATTORNEY AT LAW
18 NORTH MAIN STREET
WOODSTOWN, NJ 08098
    On behalf of the individual defendants

**HILLMAN, District Judge**

    Presently before the Court is the motion of defendants for

summary judgment on plaintiff's claims that his rights were

violated when he spoke out against a police policy at a pre-

1

shift roll call meeting.  For the reasons expressed below,

defendants' motion will be granted.

## BACKGROUND

Plaintiff, Suso Davila, a now-retired Camden City police

sergeant, filed a complaint against defendants, the City of

Camden;[1] Scott Thomson, City of Camden Police Chief; Orlando

Cuevas, City of Camden Police Inspector; Michael Lynch, Deputy

Chief of the City of Camden Police Department; and Christine

Jones-Tuckers, the Business Administrator for the City of Camden,

claiming that defendants violated his First Amendment rights and

committed violations of the New Jersey Conscientious Employee

---

[1]Plaintiff's claims are asserted against the City of Camden,
which is the same entity as the former Camden City Police
Department.  Boneberger v. Plymouth Township, 132 F.3d 20, 25 n.4
(3d Cir. 1997) (a municipality and its police department are a
single entity for the purposes of § 1983 liability).  Plaintiff's
claims against the individual defendants are in their individual
and official capacities, and the official capacity claims are
actually claims against the City of Camden.  See Monell v. New York
City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978)
(official capacity suits "generally represent only another way of
pleading an action against an entity of which an officer is an
agent"). As of May 1, 2013, the Camden City Police Department
became defunct, and the County of Camden took over the policing of
Camden.  Because plaintiff's claims arose prior to the transition,
the City of Camden is the proper party in this action. See The
Camden County Police Department: FAQs, available at
http://camdencountypd.org/wp-content/themes/ccpd/pdf/Police-FAQ.pdf
, at page 3 ("Camden County would NOT be responsible for or cover
in any way any and all legal challenges and costs associated with
prior events attributable to the municipality that wishes to join a
County police department.").

Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq., when he was disciplined and transferred because he spoke out about a Camden Police Department policy regarding "directed patrols."  As described by defendants, directed patrols were a police investigative tactic which required police officers to patrol targeted crime "hot spots" in an effort to concentrate police presence in areas of the city that were known high-crime areas. The policy required officers to "engage" members of the public who were not suspected of committing any offense in an attempt to obtain information about the community and make the police presence known in the community.  The policy required officers to approach citizens in the neighborhoods and attempt to obtain information about criminal activity in the neighborhood, and also obtain personal identifying information from individuals if they agreed to provide it, such as the person's name, date of birth, residence, and social security number.

Plaintiff believed that the directed patrol policy was sound, but he took issue with one aspect of it.  Plaintiff believed that the practice of collecting personal information from innocent citizens and commingling that information with personal information of suspected and known criminals was "illegal."  Plaintiff also believed that the repeated requests by police of innocent citizens for their personal information would

3

expose the police officers and the department to lawsuits for harassment.  In his capacity as a union board member, as vice-president of the Camden Organization of Police Superiors, and as a homeowner in Camden, plaintiff spoke out against the collection of personal information from regular citizens, and informed other Camden residents that they were not required to provide such personal information to a police officer simply because they were asked for that information from an officer.[2]

On March 17, 2009, plaintiff conducted roll call as he usually did at the beginning of the midnight shift.  That day, defendant Lynch attended roll call to speak to the officers about

---

[2] It appears that "directed patrols" fall into two categories. One type of police contact with an individual constitutes a constitutionally protected encounter, where an officer has reasonable suspicion to stop an individual suspected of committing a crime.  In that type of encounter, an individual is not free to walk away and is required to provide identifying information.  The other type of police contact with an individual – called a "mere inquiry" - does not implicate any constitutional rights, and a party is free to refuse to provide personal information and can walk away from the officer. Plaintiff's concern with the directed patrols is that the general public does not know that they may refuse to provide personal information, including social security numbers, to a police officer pursuant to a "mere inquiry," particularly when they are asked for the same information multiple times.  (Pl. Dep., Def. Ex. B, at 71, 77, 79.)  The Court notes that putting aside the place and manner in which they were raised, Sergeant Davila's concerns were not frivolous from a policy perspective. That having been said, the Court takes no position on the propriety of the directed patrol policy and need not do so in order the resolve plaintiff's First Amendment and NJ CEPA claims.

4

the engagement of citizens in Camden.  Plaintiff, along with several other officers, voiced their concerns about collecting personal information from citizens not suspected of any crime, recording that information on contact cards, and commingling that recorded data with information of suspected and known criminals that is supplied to the attorney general's office.  Plaintiff claims that he was respectful in his criticism, while other officers were much more vocal.

Despite plaintiff's deferential and respectful expression of his view on the propriety of collecting personal information from regular Camden citizens, plaintiff claims that he was the victim of retaliation.  Immediately following the meeting, plaintiff was sent home from work, where he remained on administrative leave, with pay, for three days.  At the end of the three days, he was transferred to Central Complaint where he no longer supervised directed patrols, and he was placed on a different shift that caused him to lose a shift deferential in pay.  Plaintiff was charged interdepartmentally with a violation of Rules and Regulations of the Camden Police Department Disciplinary Code, Chapter 8, Rule 8.1.6(k), "Insubordination or Serious Breach of Discipline."  The specifications of the Preliminary Notice of Personnel Action provided:

On March 17, 2009, Sergeant Suso Davila #420, a seventeen
year veteran of the Camden Police Department, interrupted
Inspector Lynch during roll call and stated, "Officers
cannot stop people for no reason."  Inspector Lynch
attempted to clarify the difference between investigative
detentions and mere inquiries to which sergeant Davila
contradicted Inspector Lynch's direction and stated, "You
couldn't do this in any other town."  Sergeant Davila also
stated the department was violating the Attorney General
guidelines by completing field contact cards.  Inspector
Lynch corrected Sergeant Davila to which Sergeant Davila
laughed and stated, "That's why you guys should not have
gotten rid of the 1A."  Sergeant Davila's comments and
demeanor were insubordinate, disruptive and adversely
impacted the efficient operation of the Department, not to
mention under minded Inspector Lynch's authority as
Commanding Officer.  Furthermore, instructing subordinates
incorrectly regarding the legal exercise of their authority
either exhibits his inexcusable lack of basic police
knowledge or his intent to subvert the good order and
effectiveness of the Department, either way Sergeant Davila
failed to carry out his responsibilities as a first line
supervisor.  Such failure jeopardizes the safety of our
officers as well as the citizens we are sworn to protect.

Def. Ex. C, Docket No. 25-8.

Plaintiff claims that his expression of his view of the
directed patrol policy as it concerned the collection of
personal information constituted speech protected under the
First Amendment to the federal and New Jersey constitutions.  He
also claims that his reassignment and shift change were in
retaliation for his protected speech, and also constituted a
violation of NJ CEPA because he "blew the whistle" on the
department's harmful activity.

Defendants have moved for summary judgment on all of

6

plaintiff's claims.  Plaintiff has opposed their motion.

**DISCUSSION**

### A.    Subject matter jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as pursuant to the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the

suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   **C.  Analysis**

      **1.  First Amendment claims**

It is well-established that a governmental entity "'may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.'"

<u>Dougherty v. School Dist. of Philadelphia</u>, --- F.3d ---, 2014 WL
6600421, 5 (3d Cir. Nov. 21, 2014) (quoting <u>Rankin v. McPherson</u>,
483 U.S. 378, 383 (1987)).  To establish a First Amendment
retaliation claim, a public employee must show that (1) his speech
is protected by the First Amendment and (2) the speech was a
substantial or motivating factor in the alleged retaliatory action,
which, if both are proved, shifts the burden to the employer to
prove that (3) the same action would have been taken even if the
speech had not occurred.  <u>Id.</u> (citation omitted).[3]

The Third Circuit recently noted that "the Supreme Court has
reiterated time and time again, [that] 'free and unhindered debate
on matters of public importance'" is "'the core value of the Free
Speech Clause of the First Amendment.'"  <u>Id.</u> (quoting <u>Pickering v.</u>

---

[3] For plaintiff's claims against the individual defendants acting
in their personal capacity, the qualified immunity doctrine
governs the analysis of those claims.  "Qualified immunity shields
government officials from civil damages liability unless the
official violated a statutory or constitutional right that was
clearly established at the time of the challenged conduct."
<u>Reichle v. Howards</u>, --- U.S. ----, ----, 132 S. Ct. 2088, 2093
(2012).  The qualified immunity analysis is a two-step process,
where a court must first decide whether the facts, taken in the
light most favorable to plaintiff, establish that defendants'
conduct "violated a constitutional right," and, second, whether
that right was "clearly established" at the time of the challenged
conduct.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Because the
Court finds that plaintiff cannot support a claim that defendants
violated his constitutional rights, the qualified immunity
analysis ends there.

Board of Education, 391 U.S. 563, 573 (1968)).  Accordingly,
"public employees do not surrender all their First Amendment rights
by reason of their employment."  Id. (quoting Garcetti v. Ceballos,
547 U.S. 563, 417 (2006)).  "At the same time, the Supreme Court
also aptly recognizes the government's countervailing interest - as
an employer - in maintaining control over their employees' words
and actions for the proper performance of the workplace.  Thus, so
long as employees are speaking as citizens about matters of public
concern, they must face only those speech restrictions that are
necessary for their employers to operate efficiently and
effectively."  Id. (citation and quotation omitted).

     Under this backdrop, a court must conduct a three-step inquiry
to determine whether a public employee's speech is protected: (1)
the employee must speak as a citizen, not as an employee, under the
test established in Garcetti and recently reiterated by the Supreme
Court in Lane v. Franks, --- U.S. ----, ----, 134 S. Ct. 2369,
2378-802 (2014); (2) the speech must involve a matter of public
concern; and (3) the government must lack an "adequate
justification" for treating the employee differently than the
general public based on its needs as an employer under the
Pickering balancing test.  Id.

     In this case, even accepting that plaintiff's view of the
police department's collection of personal information from

10

ordinary citizens involves a matter of public concern, plaintiff
cannot meet the other two elements of his First Amendment
retaliation claim.  First, plaintiff's expression of his concerns
about the data collection aspect of the directed patrols falls into
the category of an employee speaking, rather than the speech of a
citizen.  Plaintiff states that he did not dispute the legality of
gathering personal information from citizens pursuant to a "mere
inquiry" stop by police.  Plaintiff agrees that police officers are
permitted to engage in this interaction with anyone on the street.[4]

_____

[4] As a police officer, plaintiff was required to understand the
parameters of detaining and speaking to citizens.  See, e.g.,
Ashcroft v. al-Kidd, --- U.S. ----, 131 S. Ct. 2074, 2083 (2011)
{"A Government official's conduct violates clearly established law
when, at the time of the challenged conduct, the contours of a
right are sufficiently clear that every reasonable official would
have understood that what he is doing violates that right.").
The law on police speaking with citizens is clearly established:

     Even a brief detention can constitute a seizure. Terry v.
     Ohio, 392 U.S. 1, 16 (1968). However, "[t]he police do not
     violate the fourth amendment by 'merely approaching an
     individual on the street or in another public place, by
     asking him [or her] if he [or she] is willing to answer some
     questions....' " Davis, 104 N.J. at 497, 517 A.2d 859
     (quoting Florida v. Royer, 460 U.S. 491, 497 (1983)).  On the
     other hand, "mere field interrogation" is constitutional "so
     long as the officer does not deny the individual the right to
     move." State v. Sheffield, 62 N.J. 441, 447, 303 A.2d 68,
     cert. denied, 414 U.S. 876 (1973).  A police officer may
     conduct an investigatory stop if, based on the totality of
     the circumstances, the officer had a reasonable and
     particularized suspicion to believe that an individual has
     just engaged in, or was about to engage in, criminal
     activity. Terry, 392 U.S. at 21.  This Court has upheld the

Instead, plaintiff was concerned that lawsuits could be filed against him and his fellow officers by citizens because they felt harassed.  He was also generally concerned about the commingling of criminal information with innocent citizen information.  These concerns evidence a police sergeant's worry for his department's exposure to lawsuits by citizens who do not understand the legality of the police inquires, rather than for violations of citizens' rights, which plaintiff agrees was not occurring as a matter of policy.[5]

-------

constitutionality of a temporary street detention based on less than probable cause.

State v. Stovall, 788 A.2d 746, 752 (N.J. 2002); Florida v. Royer, 460 U.S. 491, 497–98 (U.S. 1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.").

[5] In his opposition to defendants' motion for summary judgment, plaintiff provides an affidavit, in which he states, "I reasonably believe that the stopping of citizens and members of the public on the streets of Camden, asking them all kinds of questions including information about crimes, and criminal activity, and personal information including their social security numbers, was a violation of the Fourth Amendment."  (Pl. Ex. M ¶ 18.)  This statement in his affidavit is in complete contrast to his deposition testimony.  There, when asked, "What did you think

Moreover, although plaintiff expressed these concerns to his neighbors and members of his private organizations, no evidence shows that he was retaliated against for that expression.[6]  The evidence in the record demonstrates that it was in his expression of his concerns at the police department's March 17, 2009 roll call that resulted in the alleged retaliation.  Plaintiff disputes that his expression of his views on the information gathering policy was not delivered in a respectful and deferential manner, but the

---

would happen if we put information of people who are not criminals with information of people who were criminals?" plaintiff answered, "Lawsuits . . . based on gathering information, harassment.  My concern was harassment.  Why are we trying to get the information?  That was my big concern; us getting sued [,] by the general public.  The ones we're stopping." (Pl. Dep., Def. Ex. B, at 71.; see also id. at 77.)  When asked, "Is it your contention that any requirement of the directed patrol policy as of March 17th of 2009 was illegal?", plaintiff responded, "No." When asked, "Was it your position at any time that you were given an illegal order?", plaintiff answered, "No."  (Id. at 77.) "[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted).  Plaintiff's affidavit is this type of submission.

[6] In his affidavit in support of his opposition to defendants' motion for summary judgment, plaintiff states that defendants were well aware that he was against the directed patrol policy.  (Pl. Ex. M ¶ 7.)  Plaintiff does not provide any other evidence to demonstrate that statement.  To defeat summary judgment, plaintiff must identify specific facts and affirmative evidence that contradict those offered by the moving party, and plaintiff must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

undisputed evidence in the record shows that plaintiff's discipline
was for the time, place and manner in which he delivered his
opinions rather than for the content of his views.  Plaintiff was
as supervisory officer who was in charge of ensuring that the
officers he supervised understood their duties, including the
parameters of the directed patrol policy.  (See Pl. Dep., Def. Ex.
B, at 79, explaining his understanding of the difference between an
"investigative detention" and a "mere inquiry.")  Plaintiff was
disciplined for insubordination because his comments and demeanor
were deemed by his supervisors to be disruptive and undermining,
and an incorrect instruction to subordinates on the legal exercise
of their authority.  (Def. Ex. C, Docket No. 25-8.)

      As the Third Circuit reiterated,

      Garcetti establishes that when public employees speak
      "pursuant to their official duties," that speech does not
      receive First Amendment protection.  This is because, when
      doing so, "employees are not speaking as citizens for First
      Amendment purposes, and the Constitution does not insulate
      their communications from employer discipline."  The rationale
      underlying this distinction "promote[s] the individual and
      societal interests that are served when employees speak as
      citizens on matters of public concern," while "respect[ing]
      the needs of government employers attempting to perform their
      important public functions."

Dougherty, --- F.3d ---, 2014 WL 6600421, *6 (quoting Garcetti,
547 U.S. at 421).  Plaintiff has not provided any proof, other
than his own perception of the events during the roll call, to
cast doubt that his conduct was not as described in the Notice of

14

Disciplinary Action.[7]

Relatedly, plaintiff has failed to demonstrate that defendants lacked an "adequate justification" for treating him differently than the general public based on its needs as an employer under the Pickering balancing test.  A public employer has a legitimate and countervailing interest, as an employer, in "promoting workplace efficiency and avoiding workplace disruption," and a public employer may limit an employee's speech where it "impairs discipline by superiors or harmony among co-workers, has a

---

[7] In an attempt to support his claim that he calmly and respectfully voiced his concern about the directed patrol policy, rather than how it was described by defendant Lynch, plaintiff contends that Captain Grimes, who attended the roll call meeting and subsequently sent plaintiff home at the direction of defendant Lynch, did not agree with Lynch's report of the incident, he did not agree with the punishment, and he altered his own report at the behest of Lynch.  (Pl. Statement of Facts ¶ 32.)  The hearing transcript testimony of Captain Grimes cited does not, however, support that proposition.  (Pl. Ex. G at 77-78.)  The hearing testimony of Lieutenant John Sosinavage, who was in charge of internal affairs administrative hearings and investigations, testified that when he reviewed defendant Lynch's report of the roll call meeting with Captain Grimes, Captain Grimes felt that plaintiff's conduct was not as severe as defendant Lynch felt it was, but that Grimes perceived plaintiff's demeanor to be "unprofessional," spilled over to the other officers, and he did not stop talking when the conversation should have ended.  (Pl. Ex. D, at 14-17.)  Plaintiff notes that Sosinavage subsequently filed a lawsuit against Lynch.  These minor disputes as to the tone of Plaintiff's objections are not material.  Nowhere does Plaintiff dispute that he expressed his concerns during a meeting designed to insure the officers under his command followed the disputed policy.  Whether he shouted or whispered, his expressed views undermined departmental goals.

detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." <u>Dougherty</u>, --- F.3d ---, 2014 WL 6600421, *10 (quoting Rankin, 483 U.S. at 388). Plaintiff has not offered sufficient evidence to demonstrate that his discipline was in retaliation for protected speech, and not an effort to promote workplace efficiency and avoiding workplace disruption.[8]

### 2. NJ CEPA

The New Jersey Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Abbamont v. Piscataway Township Bd. of Educ.</u>, 650 A.2d 958, 971 (N.J. 1994). In furtherance of that goal, the statute provides, in relevant part: An employer shall not take any retaliatory action against an employee because

---

[8] For the same reasons, plaintiff's First Amendment violation claim under the New Jersey constitution is also unavailing. <u>See</u> <u>E & J Equities, LLC v. Board of Adjustment of Tp. of Franklin</u>, 100 A.3d 539, 549 n.5 (N.J. Super. App. Div. 2014) (explaining "[b]ecause we ordinarily interpret our State Constitution's free speech clause, N.J. Const. art. I, ¶ 6, to be no more restrictive than the First Amendment to the United States Constitution, we rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution," but noting that two exceptions to the general rule are political expression at privately-owned-and-operated shopping malls).

the employee does any of the following: . . . c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .; (2) is fraudulent or criminal; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.  N.J.S.A. 34:19-3(c).

A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  Kolb v. Burns, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999) (citation omitted).

At the March 17, 2009 roll call meeting, plaintiff voiced his objection to the information gathering procedure he and his fellow officers were instructed to undertake as part of their directed patrols.  Even accepting as true that plaintiff suffered an adverse employment action as a result, plaintiff's CEPA claim fails for the same reasons as his First Amendment retaliation

17

claims.  As explained above, the evidence in the record shows that
it was the manner, time, and place in which plaintiff expressed
his concerns with the information gathering policy, and not for
the content of his views, that subjected him to discipline.  See
Connick v. Myers, 461 U.S. 138, 152-53 (1983) (citation omitted)
("When a government employee personally confronts his immediate
superior, the employing agency's institutional efficiency may be
threatened not only by the content of the employee's message but
also by the manner, time, and place in which it is delivered.");
see also Fleming v. Correctional Healthcare Solutions, Inc., 751
A.2d 1035, 1039 (N.J. 2000) (explaining that the requirement that
a whistleblower submit her complaint to a supervisor is not
limited to her immediate supervisor, and observing, "This does not
mean that an employer may not fire an employee, even a
whistleblower, who is unreasonable in expressing his or her
complaints. For example, a state employee who repeatedly called
the Governor at the Governor's residence late at night to report
violations of law at a state agency could justly be said to be
insubordinate if requested not to do so.").

        Additionally, the record evidence does not demonstrate that at
the time of the roll call meeting plaintiff could point to a law,
rule or regulation that the information gathering policy was
violating.  The Court does not question that plaintiff felt that

the police's often duplicative obtaining of personal information from regular citizens on the street simply for the sake of fulfilling a quota was not effective or desirable for many reasons, but the evidence does not demonstrate that plaintiff believed that the police were violating the law by doing so.[9]  In short, the evidence in the record does not support the elements of a CEPA violation.

<u>CONCLUSION</u>

For the reasons expressed above, defendants are entitled to summary judgment on all of plaintiff's claims against them.  An appropriate Order will be entered.

Date: <u>  December 10, 2014  </u>          <u>    s/ Noel L. Hillman      </u>
                                          NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

---

[9] Again, as noted above, plaintiff's contention in his complaint and affidavit filed in opposition to summary judgment that the directed patrol policy, as implemented by the Camden police, was a violation of the citizens' Fourth Amendment rights, does not demonstrate that as of March 17, 2009, plaintiff viewed the policy as violating citizens' constitutional rights.  Plaintiff has not pointed to any evidence that as of March 17, 2009, the information gathering part of the directed patrol policy required officers to exceed the bounds of the Fourth Amendment, which plaintiff was required to understand.  <u>See</u> <u>supra</u> note 4.  In other words, because plaintiff, as a police officer, was required to know the clearly established law on an officer's authority to stop and question citizens, he would have been capable of articulating how the information gathering policy was violating the Fourth Amendment rights of Camden citizens, rather than generally stating that it was "improper," "illegal," or "harassing."

19